David B. Goldstein  (DG 8291)
Christopher J. Klatell  (CK 3058)
RABINOWITZ, BOUDIN, STANDARD,
   KRINSKY & LIEBERMAN, P.C.
111 Broadway, 11th Floor
New York, New York 10006
(212) 254-1111

Michael Lee Hertzberg (MH 3335)
111 Broadway, 11th Floor
New York, New York 10006
(212) 982-9870
*Attorneys for Plaintiff Earl Davis*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
EARL DAVIS,                                              :
                                                         :
                      Plaintiff,                         :
                                                         :   No. 09 CV 01088 (PAC)  ECF
         v.                                              :
                                                         :   **FIRST AMENDED COMPLAINT**
JOSEPH P. CARROLL, and                                   :   **WITH JURY TRIAL DEMAND**
JOSEPH P. CARROLL LIMITED,                               :
                                                         :
                      Defendants.                        :
-------------------------------------------------------- X

Plaintiff Earl Davis ("Plaintiff"), by his attorneys, as and for his complaint against defendants Joseph P. Carroll ("Carroll"), and Joseph P. Carroll Limited ("Carroll Limited") (collectively, Carroll and Carroll Limited are "Defendants"), states as follows:

### SUMMARY OF THE LAWSUIT

1.    This lawsuit arises from the conversion by Defendants of eight works of art owned by Plaintiff.  Plaintiff is the son and heir of the well-known American artist Stuart Davis. Plaintiff owns and/or has owned hundreds of works of art created by his father, including the eight unlawfully converted Stuart Davis artworks at issue here (these eight Stuart Davis artworks

1

are hereinafter referred to as the "Eight Davis Works").  Defendants are sophisticated art merchants engaged in the business of buying and selling fine art, including American Modernist artists such as Stuart Davis.  As set forth below, Defendants engaged in a series of knowingly improper transactions involving the Eight Davis Works, as well as eight other Davis artworks (which Plaintiff has since recovered), and obtained possession of them without Plaintiff's knowledge or consent.  Plaintiff, who has never received any payment from the "sale" of the Eight Davis Works to Defendants, has demanded their return or payment of their fair market value, but such demands have been refused.  Defendants were not buyers in good faith and were not buyers in the ordinary course of business, and Defendants did not acquire any right, title or interest in any of the Eight Davis Works.

## THE PARTIES

2. Earl Davis is a citizen of New Jersey who resides at 6 Horizon Road, Apt. 2906, Fort Lee, New Jersey.

3. Plaintiff is the son of the well-known American artist Stuart Davis, and is an "heir" of Stuart Davis within the meaning of Articles 11 and 12 of the New York Arts and Cultural Affairs Law ("NYACAL").  Plaintiff's father died in 1964, leaving in his estate hundreds of works of art he had created during his lifetime, including the Eight Davis Works.

4. Plaintiff owns or has owned numerous works of art created and left by his father, including the Eight Davis Works.

5. Defendant Joseph P. Carroll is a citizen of New York who resides in New York County, New York.

6. Defendant Carroll is an art merchant engaged in the business of buying and selling fine art, including American Modernist artists such as Stuart Davis, and is the Chairman

7. Defendant Joseph P. Carroll Limited is a domestic business corporation organized under the laws of the State of New York, with its principal place of business located in New York County. Upon information and belief, Defendant Joseph P. Carroll Limited is the alter ego of Defendant Joseph P. Carroll. To the extent that Joseph P. Carroll Limited is a separate legal entity, it is an art merchant engaged in the business of buying and selling fine art.

8. Upon information and belief, Defendant Carroll is the sole proprietor of Defendant Carroll Limited and directs any business conducted by Carroll Limited.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) (diversity of citizenship) because Plaintiff is a citizen of New Jersey, and Defendants are citizens of New York, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) because: (i) all defendants reside in this district; and (ii) a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTS APPLICABLE TO THE CAUSES OF ACTION

12. In Fall 2005, Salander-O'Reilly Galleries, LLC ("SOG"), a gallery then located in Manhattan, was in possession of numerous Stuart Davis works owned by Plaintiff arising from a consignor-consignee relationship between SOG and Plaintiff.

13. SOG and Lawrence Salander, the principal of SOG, have been in bankruptcy proceedings since November 2007.

14. Pursuant to Art. 11 and 12 of the NYACAL, SOG and Salander, as art merchants,

15. Under both the NYACAL and the consignment relationship, SOG did not own, or have any claim to own, any of these Stuart Davis artworks, and title remained in Plaintiff at all times.

16. Plaintiff had an absolute right at all times to terminate the consignment relationship, to prohibit the sale of any or all of the artworks Plaintiff owned, and to demand and obtain the return of any and all of his artworks.

17. Immediately upon learning in early December 2005 that SOG had engaged in unauthorized transactions in certain of Plaintiff's Stuart Davis artworks, Plaintiff demanded that SOG suspend the selling or offering for sale of any of Plaintiff's Stuart Davis artworks. In January 2006, Plaintiff demanded in writing that SOG immediately return to Plaintiff all artworks owned by Plaintiff in SOG's inventory.

**The 2006 Transfers of Plaintiff's Stuart Davis Works to Defendants**

18. Instead of ceasing sales and returning all of Plaintiff's Stuart Davis works as demanded, between January and May, 2006, SOG and Defendants entered into a series of improper transactions, without Plaintiff's knowledge or consent, culminating in three agreements memorialized on May 22, 2006, in which SOG purported to transfer to Defendants 16 Stuart Davis artworks owned by Plaintiff (the "16 Davis Works"), which included the Eight Davis Works at issue here (and other artworks not owned by Plaintiff) at far below their fair market value.

19. SOG actively concealed these transactions, including the transfer of the 16 Davis Works, from Plaintiff.

20. A May 22, 2006 "Summary Exchange Agreement" incorporated a series of prior agreements in 2006, as well as providing for additional transactions. As set forth in that May 22, 2006 Summary Exchange Agreement, SOG purportedly transferred $300,000, and 40 artworks, including 11 Davis Works, to Carroll, and Carroll purportedly transferred $1,465,000 (a net transfer of $1,165,000 from Carroll to SOG) and four artworks to SOG.

21. The other 29 artworks purportedly transferred from SOG to Defendants pursuant to the May 22, 2006 Summary Exchange Agreement are of substantial value, and included a Stuart Davis work not owned by Plaintiff, and valuable works by well-known and prominent artists such as Milton Avery; John Sloan; Patrick Henry Bruce; Ralston Crawford; Suzy Frelinghuysen; George Alfred Henry Maurer; Paul Kelpe; Morgan Russell; and L.K. Morris.

22. The value of the money and artworks, including the 11 Davis Works, purportedly transferred to Defendants by SOG pursuant to that Summary Exchange Agreement greatly exceeded the value of the money and artworks transferred by Defendants to SOG.

23. In three prior agreements in January and February 2006, incorporated in the Summary Exchange Agreement, all of the artworks transferred by SOG to Defendants, including four Davis artworks owned by Plaintiff, are identified as "owned by Salander-O'Reilly Galleries."

24. Upon information and belief, Defendants knew at the time that these four Davis Works were not owned by SOG, but were in fact owned by Plaintiff.

25. Under a separate "Exchange/Buy-Back Agreement," also dated May 22, 2006, SOG purported to transfer to Defendants four additional Davis artworks owned by Plaintiff in exchange for the payment of $250,000, plus a small watercolor work on paper identified in the agreement as by Ralph Albert Blakelock, and a photograph of Blakelock.

26. The value of the four Davis Works purportedly transferred to Defendants by SOG pursuant to the "Exchange/Buy-Back Agreement" greatly exceeded $250,000 plus the value of the watercolor and the photograph that Defendants transferred to SOG.

27. Under a "Purchase Agreement," also dated May 22, 2006, SOG purported to transfer to Defendants the last of the 16 Davis Works, *Drawing for Form Study,* for $20,000.

28. The value of *Drawing for Form Study* greatly exceeded $20,000.

29. Plaintiff has never received any proceeds from SOG or Defendants for the purported transfer to Defendants of any of the 16 Davis Works that Plaintiff owns.

30. The value of the 16 Davis Works alone greatly exceeded the total value of the money and artworks transferred by Defendants to SOG.

31. None of the Summary Exchange Agreement, the prior agreements incorporated therein, or the Exchange/Buy-Back Agreement, identified a specific price paid for a specific artwork transferred between SOG and Defendants.

32. As sophisticated and experienced art merchants, Defendants knew, and should have known, that the net consideration they purportedly paid to SOG for the 45 artworks, including the 16 Davis Works, was far below their fair market value.

33. As sophisticated and experienced art merchants, Defendants knew, and should have known, that the net consideration they purportedly paid to SOG for the 45 artworks was far below the fair market value of the 16 Davis Works alone.

34. Upon information and belief, Defendants knew at the time that it entered into the agreements for the transfers of the 16 Davis Works that SOG had serious financial problems and was in desperate need of cash.

35. The consideration purportedly paid by Defendants to SOG for the 45 artworks,

including the 16 Davis Works, both in the individual transactions and cumulatively, was so far below fair market value at that time that Defendants, as sophisticated and experienced art merchants, were on notice that there was something seriously wrong with the transactions.

36. The increasing, overlapping and cumulative Exchange Agreements and the Exchange/Buy-Back Agreement, including the absence of any specific, individual prices for any of the dozens of artworks exchanged, were so unusual and irregular as to constitute warnings to Defendants, as sophisticated and experienced art merchants, that there was something wrong with the transactions.

37. The false statement in the three January and February 2006 Exchange Agreements that SOG owned the four Davis Works, which upon information and belief, Defendants knew to be false at the time, constituted warnings to Defendants, as sophisticated and experienced art merchants, that there was something seriously wrong with the transactions.

38. Defendants did not engage in the reasonable inquiry required of them as art merchants in light of these warnings, which would have revealed that none of SOG's transfers of the 16 Davis Works was authorized by Plaintiff, the owner of the Davis Works, and that Plaintiff did not and would not have authorized their sale at the bargain basement prices purportedly paid by Defendants.

39. Defendants never contacted Plaintiff to inquire whether he approved the purported agreements to transfer any of the 16 Davis Works, including at the prices agreed to between SOG and Defendants, nor did Defendants request that SOG obtain written assurances from Plaintiff that the purported transfers of the 16 Davis Works were authorized at the agreed prices.

40. By failing to make reasonable inquiry under the facts and circumstances herein, Defendants did not observe the reasonable commercial standards of fair dealing in the trade.

41.     Defendants knew or should have known that the purported transfer of the 16 Davis Works violated Plaintiff's rights in those works.

42.     Defendants exploited their knowledge of SOG's financial problems, including its need for cash, to obtain the 16 Davis Works in undisclosed transactions, at fire sale prices, in which SOG kept for itself any and all funds received from Defendants for the 16 Davis Works.

43.     Defendants were not buyers in good faith and were not buyers in ordinary course of business under the New York Uniform Commercial Code with respect to the 16 Davis Works.

44.     Defendants did not acquire title to any of the Plaintiff's Davis Works.

### Demand For Return of Plaintiff's Davis Works

45.     Plaintiff did not learn that SOG had transferred any of the 16 Davis Works, including that they had been transferred to Defendants, until September 2006.

46.     After Plaintiff learned of the unauthorized transfers by SOG to Defendants, Plaintiff demanded that SOG obtain the return of all the transferred Davis Works.

47.     When Plaintiff learned that the Davis Works had been transferred to Defendants, and demanded their return, Salander represented to Plaintiff that the Davis Works had not been sold to Defendants, but had only been consigned to them.

48.     In Fall 2006, SOG returned to Plaintiff eight of the 16 Davis Works. The eight Davis Works returned to Plaintiff consisted of six (6) works on paper: *Drawing for Form Study; Study for Matches; Drawing for Percolator; Study for Egg Beater No. 1; Standard Brand No. 2;* and *Art Digest Cover;* one oil painting: *Graveyard on the Dunes, Provincetown;* and one casein on canvas: *Black and White Variation on Pochade II (Elite #7).*

49.     On October 12, 2007, Plaintiff made written demand upon Defendants for immediate return to Plaintiff of the remaining unreturned Davis Works.  On October 17, 2007,

Defendants refused such demand in writing. The Eight Davis Works that have not been returned consist of two oil paintings and one casein on canvas: *Tobacco Fields, Tioga, Pa.; Abstraction;* and *Black and White Variation on Pochade I (Elite # 6);* and five works on paper: *Pad Series No. 1; Pad Series No. 3; Study for Pennsylvania; Study for Rhythm;* and *Drawing for Report From Rockport*.

50. Upon information and belief, soon after obtaining the Davis Works, Defendants offered several of them for sale for sums far greater than the amounts Defendants had paid SOG.

51. Upon information and belief, Defendants offered for sale in 2006 seven (7) of the 16 Davis Works, cumulatively priced at $2,370,000, minimum net price, which amount is far more than Defendants paid (including both net cash and artworks) for the entire body of 16 Davis Works, *plus* the other 29 valuable artworks.

52. Upon information and belief, Defendants are currently in possession of at least several of the Eight Davis Works.

53. Upon information and belief, Defendants may have sold one or more of the Eight Davis Works for amounts substantially greater than they paid to SOG.

### FIRST CLAIM FOR RELIEF: CONVERSION

54. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 53 above with the same force and effect as if fully set forth herein.

55. At all relevant times, Plaintiff has had a complete right of ownership in and complete right to possess the Eight Davis Works.

56. At all relevant times, Plaintiff's rights in the Eight Davis Works, have been and are superior to Defendants' rights in those Works.

57. At all relevant times, Defendants have never had any right, title or interest in or to

any of the Eight Davis Works.

58.  Plaintiff has demanded return of the Eight Davis Works.

59.  Defendants are obligated to deliver the Eight Davis Works or their fair market value to Plaintiff.

60.  Defendants improperly and without justification have failed and refused to return the Eight Davis Works or to pay to Plaintiff their fair market value.

61.  Defendants have dealt in the Eight Davis Works in a manner inconsistent with the rights of Plaintiff, and have interfered with Plaintiff's rights, and have acted to the exclusion of Plaintiff's rights in the Eight Davis Works.

62.  Defendants have thereby converted the Eight Davis Works and/or the proceeds from the sale of those Works to their own use and benefit, to the detriment of Plaintiff's ownership and possessory rights to the Eight Davis Works.

63.  As a result of Defendants' conversion, Plaintiff has been injured and damaged in an amount not less than $3,000,000, plus interest.

## SECOND CLAIM FOR RELIEF:  REPLEVIN (Recovery of Chattels)

64.  Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 63 above with the same force and effect as if fully set forth herein.

65.  At all relevant times, Earl Davis has been the owner of the Eight Davis Works, which constitute unique chattels.

66.  Ownership of or title to the Eight Davis Works was not transferred from Plaintiff to Defendants through the transactions described herein.

73.  Any purported transfer of ownership or title from Plaintiff to Defendants was voidable and/or void *ab initio*.

74. Defendants did not obtain good or valid title to the Eight Davis Works from SOG or otherwise.

75. Defendants have no right to continued possession of any of the Eight Davis Works.

76. If and to the extent that Defendants are in possession or control of any of the Eight Davis Works, such possession or control is without legal basis or right.

77. Plaintiff's rights to possess the Eight Davis Works are superior to Defendants'.

78. Plaintiff has made demand upon Defendants for return of the Eight Davis Works, as the rightful owner of such works.

79. Defendants have failed and refused to return any of the Eight Davis Works to plaintiff.

80. Plaintiff has suffered damages in an amount not less than $3,000,000 by the actions of Defendants.

81. Plaintiff is entitled to return of any of the Eight Davis Works in the possession or control of Defendants.

## THIRD CLAIM FOR RELIEF:  UNJUST ENRICHMENT

82. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 81 above with the same force and effect as if fully set forth herein.

83. Defendants have benefited from and been unjustly enriched by their unlawful and improper actions in converting the Eight Davis Works, including by selling one or more of them to third persons for amounts substantially in excess of the amounts Defendants paid to SOG.

84. Defendants' unjust enrichment has come at Plaintiff's expense and to Plaintiff's detriment, who has never received any of the proceeds from the sale of any of the Eight Davis

Works.  Plaintiff has suffered damages in an amount not less than $3,000,000, plus interest.

## FOURTH CLAIM FOR RELIEF:  DECLARATION OF OWNERSHIP

85. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 53 above with the same force and effect as if fully set forth herein.

86. As set forth above, Plaintiff is the sole and true owner of all title and interest in the Eight Davis Works.

87. Defendants hold no title, and have never held title, in or to the Eight Davis Works, and any title that Defendants purport to have acquired is void or voidable.

88. Plaintiff accordingly seeks a declaration that Plaintiff is the owner of the Eight Davis Works and that Defendants do not have and never had any title or interest therein.

## RELIEF REQUESTED

i) On the First Cause of Action, awarding Plaintiff damages in the amount of at least $3,000,000, plus interest;

ii) On the Second Cause of Action, ordering Defendants to turn over and to deliver to Plaintiff all and any of the Eight Davis Works in Defendants' possession, custody or control;

iii) On the Third Cause of Action, awarding Plaintiff damages in the amount of at least $3,000,000, plus interest;

iv) On the Fourth Cause of Action, declaring Plaintiff to be the owner of the Eight Davis Works;

v) An award of Plaintiff's costs and all interest accrued to date; and

vi) Such other and further relief as the court deems just and proper.

Dated: New York, New York
April 14, 2009

                        RABINOWITZ, BOUDIN, STANDARD, KRINSKY
                        & LIEBERMAN, P.C.

                By: _____
                        David B. Goldstein (DG 8291)
                        Christopher J. Klatell (CK 3058)
                        111 Broadway, 11th Floor
                        New York, New York 10006
                        (212) 254-1111

                        Michael Lee Hertzberg (MH 3335)
                        111 Broadway, 11th Floor
                        New York, New York 10006
                        (212) 982-9870

                        *Attorneys for Plaintiff Earl Davis*

## JURY DEMAND

Trial by jury is hereby demanded for each of the issues so triable.

_____
David B. Goldstein

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of April, 2009, I caused a true and correct copy of the foregoing First Amended Complaint to be served by email with the consent of counsel for Defendants, on the following:

> Jeffrey A. Udell (JU 0411)
> Olshan Grundman Frome
>   Rosenzweig & Wolosky LLP
> Park Avenue Tower
> 65 East 55th Street
> New York, NY 10022
> judell@olshanlaw.com

Dated: April 17, 2009

_____
David B. Goldstein